A. F. HARRIS *et al.* impleaded, etc.

*v.*

THE CITY OF CHICAGO.

*Filed at Ottawa June 13, 1896.*

1. EMINENT DOMAIN—*section 15, article 9, of City and Village act, construed.* Section 15, article 9, of the City and Village act, (Rev. Stat. 1874, p. 262,) providing that the court shall enter an order that the city or village may, "at any time thereafter," take possession of condemned property, has reference to a supplemental order to be made upon proof that the compensation has been paid or deposited, and not to the judgment rendered on the jury's finding.

2. SAME—*taking possession of condemned lands—waiver of owner.* The provision of the City and Village act, (Laws of 1891, p. 80,) that the city or village shall take and pay for lands condemned within two years from entry of judgment in the condemnation proceedings, may be waived in open court and the waiver made a part of the judgment of condemnation.

3. SAME—*condemnation of street across railroad—easement only acquired.* A judgment condemning a strip of land for a street across railway tracks and right of way upon a verdict in the usual form, making award of compensation without conditions, properly restricts the interest acquired to an easement instead of the fee.

4. SPECIAL ASSESSMENTS—*when stipulation as to possession of condemned lands is no defense to special assessment.* A supplemental petition for the confirmation of a special assessment to pay the compensation awarded on property taken by condemnation for a street should not be dismissed because it was incorporated in the judgment by stipulation that the city would not take certain railway lands condemned for six years unless the companies owning them should sooner elevate their tracks in accordance with a certain ordinance, as such stipulation, at most, only renders the judgment erroneous, and not void.

5. SAME—*effect of city not taking immediate possession.* A special assessment for the extension and opening of a street upon property specially benefited is not prevented by the mere fact that the city cannot, for a limited but uncertain time, take possession of a small portion of the land to be included in such street.

6. SAME—*what may be shown on application for judgment for special assessment.* It seems that everything which shows that a special assessment should not be collected, and which cannot be interposed at the time of the application for judgment of confirmation, can be urged for defense upon application of the county collector for judgment of sale, and proper relief granted by the court.

7. SAME—*indefinite postponement of possession of street—equitable relief.* If objection that possession of part of land condemned for a street cannot be had for an indefinite period cannot be interposed as a defense to the application for judgment of sale for the assessment, a court of equity may afford relief if the city attempts to enforce payment unjustly.

8. EVIDENCE—*matters affecting benefits competent in special assessments.* An ordinance, together with a stipulation in a judgment of condemnation for a street, which tends to show that at about the time of opening the street in question access to the property of the objecting owners will be had by means of another street the impassable condition of which was relied on to enhance the benefits, is admissible in evidence in a supplemental proceeding under section 53 of the City and Village act. (*Hutt* v. *City of Chicago*, 132 Ill. 352, and *Edwards* v. *City of Chicago*, 140 id. 440, distinguished.)

APPEAL from the Circuit Court of Cook county; the Hon. FRANCIS ADAMS, Judge, presiding.

HILLIS & McCoy, for appellants.

JOHN F. HOLLAND, and WILLIAM G. BEALE, Corporation Counsel, for appellee.

Mr. JUSTICE BAKER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook county, confirming a special assessment in a supplemental proceeding under section 53 of article 9 of the Cities and Villages act, instituted for the purpose of raising the amount necessary to pay the compensation theretofore awarded for property taken by condemnation for opening Sixtieth street, from State street to Wentworth avenue, in the city of Chicago.

The supplemental petition recites that the aggregate amount awarded as just compensation for the various lots and parcels of property to be taken or damaged for the proposed improvement was $51,246.80, and prays for the appointment of commissioners to make an assessment to raise money to pay said awards and costs incurred and to be incurred in making and collecting said assessment. Commissioners having been appointed by the court and an assessment roll made and returned by the commis-

sioners, the appellants herein appeared in the court below and filed objections to the said assessment being confirmed against their respective lots and parcels of property, on the ground, among other reasons, that their said lots would not be benefited by the proposed improvement, and that the judgment of the court in the condemnation proceedings which preceded the filing of the supplemental petition, in so far as it related to one of the parcels of land condemned, was not warranted by law.

In the condemnation suit which preceded the filing of the supplemental petition there were two separate verdicts and judgments. One of said verdicts awarded amounts aggregating the sum of $50,346.80 for various parcels of land to be taken for the purpose of opening said street. The judgment on this verdict provides that "upon payment to the county treasurer of Cook county, Illinois, by said city, of the said several sums for the use of the owner or owners of any or each of said parcels of property, or upon proof made that the said sums of money, or any of them, have been paid to the owner or owners, respectively, of said parcels of property, the city of Chicago shall have the right, at any time thereafter, to take possession of and damage the property in respect to which compensation shall have been so paid or deposited." The other verdict awarded to the owner or owners of a part of the right of way of the Chicago, Rock Island and Pacific Railway Company and the Lake Shore and Michigan Southern Railway Company (describing the part particularly) the sum of $900 as just compensation to be paid to the owner or owners of said parcel of land sought to be taken or damaged for the proposed improvement.

In the judgment of the court rendered on this latter verdict there is incorporated a provision which reads as follows: "And it is further ordered and adjudged, by agreement of the city of Chicago, by its attorneys, and the said railway companies and each of them, by their

attorneys, said agreement being now made and entered into in open court, that upon payment to the county treasurer of Cook county, Illinois, by the said city of Chicago, of the said sum of money for the use of said railway companies, or upon proof made to or before the court that the said sum of money has been paid to said railway companies, the city of Chicago shall, with respect to the property for which said compensation shall have been paid or deposited, have the right to take possession of or damage the same at any time after the expiration of six years from the date of the entry of this order, or at such time prior thereto as said railway companies shall, in compliance with an ordinance of the city of Chicago passed July 9, 1894, construct, erect and elevate the plane of their tracks where the same cross Sixtieth street, in the city of Chicago, or would cross said street if it were extended and opened across the rights of way of said companies, the possession and right of said city of Chicago in the property before mentioned being solely for the uses and purposes of the public improvement, as set forth in the petition filed herein, the postponement of the time for the taking of such possession, as herein provided for, being the condition on which this order is made."

Said ordinance of July 9, 1894, requires the Chicago, Rock Island and Pacific Railway Company and the Lake Shore and Michigan Southern Railway Company to elevate their tracks in the city of Chicago for a distance of five and one-third miles south from a point near Eighteenth street, in said city of Chicago, and provides that a sub-way shall be constructed under said tracks thus elevated, at Sixtieth street, and also makes provision for a similar sub-way under the tracks at Sixty-first street, and requires that the elevation of said railroad tracks for the whole of said distance be completed by August 1, 1899, but leaves it to the discretion of the railroad companies whether they will complete the elevation of the tracks in a shorter period or not.

Prior to the trial on the assessment roll, the objectors in the court below, appellants here, moved the court to dismiss the petition for a special assessment to cover the cost of the proposed improvement, for the reason that the city had stipulated and agreed not to take possession of a portion of the property condemned within six years from the date of the judgment of condemnation unless the railroad tracks should be elevated before that date. But the court overruled the motion, and exception was taken.

At the trial before the jury upon the objections that the property of the objectors will not be specially benefited by the proposed improvement, and that the assessments upon their property exceed the benefits which will accrue to said property from such improvement, the attorneys for the objectors offered in evidence a certified copy of the judgment order of condemnation as to the said part of the right of way of the Chicago, Rock Island and Pacific Railway Company and Lake Shore and Michigan Southern Railway Company, and also offered in evidence the ordinance of July 9, 1894, requiring said railway companies to elevate their tracks. But the court, over the objections and exceptions of appellants, excluded both said judgment order and said ordinance from the jury.

The verdict of the jury and judgment of the court confirmed the special assessments upon the property of appellants as the same appeared upon the assessment roll that was returned into court by the commissioners.

*First*—In our opinion it was not error to overrule the motion to dismiss the supplemental petition, for the reason that by stipulation of the parties it was incorporated in one of the condemnation judgment orders that the city would not take possession of the premises therein condemned until after the expiration of six years from the date of such judgment, unless prior thereto the railway companies should, in compliance with the ordinance of July 9, 1894, elevate the plane of their tracks at the place where the same would cross the proposed Sixtieth street.

It is provided in section 10 of article 9 of the Cities and Villages act, that upon the return of the verdict of the jury in a proceeding for the condemnation of property for a local improvement the court shall order the same to be recorded, and shall enter such judgment or decree as the nature of the case may require. And it is provided in section 14 that any final judgment or judgments rendered by the court upon the finding or findings of any jury or juries shall be a lawful and sufficient condemnation of the land or property to be taken, upon the payment of the amount of such finding. Here, the parties to the condemnation proceeding were the city of Chicago and the two railroad companies, and the court had full jurisdiction of said parties, and the passage of the ordinance for the proposed local improvement and the filing of the petition gave the court jurisdiction of the subject matter. Therefore the judgment that was rendered, even if it can be regarded as erroneous, was not invalid and void. In *Newman* v. *City of Chicago*, 153 Ill. 469, this court said that the condemnation proceeding is final and conclusive as to the parties thereto until it is reversed or vacated, and that hence the questions properly arising in the condemnation proceeding cannot be re-litigated in the supplemental proceeding, the object of which is merely to raise funds to pay the judgment of condemnation already entered. And in *Goodwillie* v. *City of Lake View*, 137 Ill. 51, which was a supplementary proceeding to raise money by a special assessment to pay for lands to be taken by a municipality for opening and extending a street, it was held that the city might levy a special assessment before it had acquired, by condemnation or otherwise, all the ground required for the street.

Appellants seem to place reliance on the provision in section 15 of said article 9, that the court shall enter an order that the city or village shall have the right, *at any time thereafter*, to take possession of or damage the property. That section does not relate to the judgment to be

rendered by the court upon the finding of the jury, but to a supplemental order to be made by the court upon proof that the compensation fixed by the verdict, and the judgment based thereon, have been paid or deposited as directed by the court. The petitioner does not have the right to take possession at any time after the entry of the verdict and judgment awarding just compensation, but only after the payment of such compensation or the entry of the supplemental order above mentioned.

Appellants also rely on the amendment or proviso of June 18, 1891, to section 53 of said article 9. (Laws of 1891, p. 80.) It is therein provided that the city or village shall take and pay for the lands sought to be taken or damaged, within two years of the entry of judgment in the condemnation proceedings. This provision was manifestly enacted for the benefit and protection of the owner of the land whose property is sought to be taken or damaged, and the doctrine is, that a party may waive not only a statutory, but even a constitutional, provision made for his benefit. (*Chicago, Milwaukee and St. Paul Railway Co.* v. *Hock*, 118 Ill. 587, and authorities there cited.) Here the benefit of the statute was waived in open court, and, by agreement of the city and the railway companies, made a part of the judgment of condemnation.

Assuming that the extension and opening of Sixtieth street are a local improvement, and that there is a valid ordinance for such improvement, and that the property of appellants will be specially benefited thereby, we are unable to see upon what theory of law or of justice the mere fact that the city is prevented, for a limited but uncertain time, from taking possession of a small portion of the land that is eventually to be included in such street as extended, works the result of rendering it unlawful to make any special assessment whatever upon appellants' property for the purpose of the proposed improvement.

But it is urged that the money, if collected now, will lie in the city treasury four or five years and the people

who pay it will be getting no benefit during that time, and that the city has tied its hands and cannot open the street for a number of years, and has no right to collect, or even levy, the assessment unless it is ready and able to use it. The $900 awarded the railway companies is but a small part of the $51,246.80 to be levied.   As soon as said companies elevate their tracks at the place of their intersection with Sixtieth street, in compliance with the ordinance of July 9, 1894, the city will have the right to take possession of or damage the property for which said compensation was allowed said companies. It is only in the contingency the tracks at that place are not elevated sooner, that the taking of possession is postponed until the expiration of six years from the date of the judgment of condemnation.   The provisions of the ordinance and the terms of the stipulation indicate that an immediate commencement and continuous prosecution of the work of elevating the tracks were contemplated and provided for, and at the time the motion to dismiss was submitted to the circuit court, the attorney for the city offered to stipulate that the assessment roll should not be certified to the collector until the tracks were elevated.

It does not appear to us that the mere making of an assessment seriously jeopardizes the rights or the interests of appellants. It seems that everything which shows that a special assessment ought not to be collected, and which cannot be interposed at the time of the application for judgment of confirmation, can be urged as a defense upon the application of the county collector for judgment of sale and proper relief granted by the court. (*Boynton* v. *People ex rel.* 159 Ill. 553.)   And even if this be not so, then, if the city should attempt to enforce payment of the assessments at a time and under circumstances that would be unjust and inequitable, a court of equity would afford adequate relief.   *Holmes* v. *Village of Hyde Park*, 121 Ill. 128; *Goodwillie* v. *City of Lake View, supra.*

*Second*—The claim that the condemnation judgment as to the strip of land across the railway tracks and right of way was not in accordance with the verdict of the jury, and therefore invalid, and that the objections filed in that behalf should have been sustained, is without merit. The contention is, that the judgment did not conform to the verdict of the jury because such verdict was in the usual form, awarding $900, without conditions, for the property therein described, whereas the judgment awarded that amount of compensation but restricted the interest in the property to be acquired to a mere easement therein for the sole purpose of the proposed improvement, instead of providing that the city should acquire the fee to the property. In *Illinois Central Railroad Co.* v. *City of Chicago,* 141 Ill. 586, this court held that in a proceeding by a city against a railway company to condemn a part of its right of way and tracks for the extension of a public street over or across such right of way and tracks, a judgment of condemnation, no matter in what language couched, will not take the land itself or the exclusive use thereof, but that the city will acquire only a mere easement to cross or pass over such right of way and tracks.

*Third*—The action of the circuit court in refusing to admit in evidence before the jury the ordinance of July 9, 1894, and in connection therewith the condemnation judgment against the railway companies, presents a more serious question. The evidence shows, or tends to show, that the district assessed for opening Sixtieth street extends a quarter of a mile south of Sixty-first street and half a mile west of Wentworth avenue; that while the district is populous, it is in a pocket, by reason of the railroad rights of way and tracks which must be crossed in order to reach State street; that the property of most of the objectors and of appellants either fronts on Sixty-first street or is south of it, or west of Wentworth avenue, and that while Sixty-first street is a through street, yet

its crossing over the rights of way and tracks is only by means of a viaduct, and this viaduct is narrow, is occupied by several street car lines, is crowded, and is so high and its grade so steep that it cannot be used by traffic teams. The city relied largely upon the evidence it introduced tending to prove the above facts, in order to show that the property of appellants would be specially benefited by the opening of Sixtieth street between State street and Wentworth avenue, it being the next street north from Sixty-first street. One of the witnesses for appellee testified, in express terms, that Sixty-first street is the natural outlet for the locality here in question, if it only had proper facilities for crossing the railway tracks, which it had not. The ordinance that was excluded from the jury made provision for a sub-way sixty-six feet wide, under the railroad rights of way and tracks at Sixty-first street as well as for such a sub-way at Sixtieth street, and said ordinance, taken in connection with the stipulation and agreement embodied in the condemnation judgment for the postponement of the time when the city could take possession of the Sixtieth street crossing, tended to prove that there would be ample crossing facilities at Sixty-first street at or about the same time that Sixtieth street could be opened, and that therefore the benefits to the property of appellants by the opening of Sixtieth street would be inconsiderable, if any. All natural and probable results that will flow from a contemplated improvement may properly be considered in estimating benefits, and we think that the testimony that was excluded was both competent and material.

Appellee urges that it was not error to exclude the proffered evidence, because it is improper, in estimating benefits, to take into consideration future action of the municipality making the improvement, and relies upon the cases of *Hutt* v. *City of Chicago*, 132 Ill. 352, and *Edwards* v. *City of Chicago*, 140 id. 440. Said cases do not apply to the case at bar. It was held in those cases that future

action of the city in ordering additional improvements could not be regarded either as a probable or natural consequence to flow from the improvement ordered. In the *Hutt case* it was said (p. 358): "The trouble here is, no bridge has ever been ordered. The improvement ordered is the extension of a street, without any provision whatever being made for the erection of a bridge." And in the *Edwards case* it was held that no assessment could be made upon lands lying beyond the terminus of a proposed sewer for benefits that would accrue thereafter if the sewer should be extended westward by future action of the city. In the case now before us, on the other hand, the construction of a sub-way at Sixty-first street was not and is not contingent upon future action of the city, but full provision was and is made for its construction by the ordinance that was offered in evidence.

For the error in refusing to permit the ordinance of July 9, 1894, and the condemnation judgment, to go to the jury, the judgment of confirmation is reversed and the cause remanded.        *Reversed and remanded.*